UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

UNITED STATES OF AMERICA                                    PLAINTIFF


v.                                         CIVIL ACTION NO. 3:16CR-101-CRS


PHILIP E. MICHAEL, II                                       DEFENDANT


**<u>MEMORANDUM OPINION</u>**


This matter is before the court on motion of the defendant, Philip E. Michael, II ("Michael"), to dismiss Count 8 of the Second Superseding Indictment ("SSI").[1]

Count 8 of the SSI charges Michael with aggravated identity theft, in violation of 18 U.S.C. § 1028A. Michael has moved to dismiss this count on the ground that the indictment, as charged, does not state a crime for which he may be convicted.

An indictment must provide a "plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed.R.Crim.P. 7(c). The purpose of an indictment is "to inform the defendant of the nature of the accusation against him." *Russell*, 369 U.S. at 767 (quoting *United States v. Hess*, 124 U.S. 483, 487 (1888)). "The Federal Rules of Criminal Procedure, 18 U.S.C.A., were designed to eliminate technicalities in criminal pleading and are to be construed to secure simplicity in procedure. Rule 2, F.R.Crim.Proc." *United States v. Debrow*, 346 U.S. 374, 376 (1953). As explained by the Supreme Court as early as 1895, an indictment need not be a literary work of art:

T]he true test is, not whether it might possibly have been made more certain, but

---

[1] The United States has indicated that it intends to proceed under the Second Superseding Indictment. This court will therefore address whether the charge therein is able to withstand the challenge raised in the present motion.

whether it contains every element of the offense intended to be charged, and sufficiently apprises the defendant of what he must be prepared to meet, and, in case any other proceedings are taken against him for a similar offense, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction. Evans v. U. S., 153 U. S. 584, 587, 588, 14 Sup. Ct. 934; Batchelor v. U. S., 156 U. S. 426, 15 Sup. Ct. 446.

*Cochran v. United States*, 157 U.S. 286, 290, 15 S. Ct. 628, 630, 39 L. Ed. 704 (1895).

The indictment must be read as a whole, accepting the factual allegations as true, and construing those allegations in a practical sense with all the necessary implications. *United States v. Reed,* 77 F.3d 139, 140 n. 1 (6th Cir.1996) (en banc). An indictment is to be construed liberally in favor of its sufficiency. *United States v. Davis,* 306 F.3d 398, 411 (6th Cir.2002). *United States v. McAuliffe*, 490 F.3d 526, 531 (6th Cir. 2007).

The SSI charges that

On or about September 17, 2013, in the Western District of Kentucky, Jefferson County, Kentucky, and elsewhere, the Defendant herein, **PHILIP MICHAEL**, did knowingly possess, transfer and use the means of identification of another person, without lawful authority, during and in relation to the offense charged in Count 7, to wit, **PHILIP MICHAEL** possessed, transferred, and used the name, date of birth and other identifying information for P.R. and the name and NPI # of A.S., a physician, to submit a fraudulent claim for payment.

SSI, ¶ 65.

The defendant contends that, under Sixth Circuit caselaw, taking the facts as true, Michael's conduct does not constitute the crime of aggravated identity theft.

There does not appear to be any dispute as to what Michael purportedly did on September 17, 2013. The United States explains Count 8 in greater detail in its brief, stating that while working as a pharmacist for Aracoma Pharmacy, Michael allegedly used the identifying information of P.R. and the name and physician number of A.S. to submit a claim to Humana for reimbursement for a drug, Lovasa, which was not authorized by A.S. and was not dispensed to P.R. by Michael. Michael urges that under Sixth Circuit law, this act, if proved, does not

constitute aggravated identity theft.  We agree.

The contours of the crime of aggravated identity theft are defined by three cases in the Sixth Circuit:  *United States v. Miller*, 734 F.3d 530 (6th Cir. 2013); *United States v. Medlock*, 792 F.3d 700 (6th Cir. 2015); and the very recent case of *United States v. White*, 846 F.3d 170 (6th Cir. 2017) which discusses both *Miller* and *Medlock*.

In *Miller* and *Medlock*, the Sixth Circuit found that the use of another's identifying information did not, *per se*, fall under the aggravated identity theft statute, and under the facts in each case, the statute did not reach the conduct charged.  The Sixth Circuit reached a different result in *White*.  The court found, after distinguishing the facts before it from those in *Miller* and *Medlock*, that the defendant properly stood convicted of aggravated identity theft.

In *Miller*, the defendant provided a document, a resolution by an investment group, to a bank in order to secure a loan with the group's property as collateral. The investors' names were handwritten in, without their knowledge and consent.  The resolution falsely indicated that the group met and authorized the defendant to pledge the collateral.  The Sixth Circuit considered and ultimately rejected the United States' contention that the "use" of the means of identification of another person should be construed broadly to include the intentional availment by the defendant of the investors' names in order to falsely manufacture authority to encumber the group's property for the defendant's benefit.  While noting that the House Report stated that "the statute was intended to reduce the incidence of identity theft and fraud and address the most serious criminals by providing stronger penalties for those who would commit such crimes in furtherance of other more serious crimes," (H.R. Rep. No. 108-528, 785 (2004)), the Sixth Circuit found that "Miller's case is readily distinguishable from all eight of the identity theft cases offered in the report as examples of why Congress needed to enact a two-year mandatory

minimum sentence of imprisonment that runs consecutive to a predicate offense for certain kinds of identity theft crimes." 734 F.3d at 542. The court reasoned that although the conduct constituted bank fraud, and affirmed Miller's conviction on that court, "as a matter of law, Miller did not "use" a means of identification within the meaning of § 1028A by signing a document in his own name which falsely stated that [the other investors] gave him authority as [the group's] managing member, to act on behalf of [the group] and pledge its property…"

This court similarly finds that the facts herein are readily distinguishable from the eight examples recited in the House Report. All of those cases involved the defendant's creation of a false persona with the victim's information which was then employed by the defendant, or the impersonation of the victim by the defendant, or the facilitation for another to do so. By contrast, Michael is charged with submitting a false claim to an insurance company for reimbursement for a prescription for an individual, P.R., which was neither written by a physician, A.S., nor filled by Michael. While this might constitute healthcare fraud, it does not constitute aggravated identity theft.

In *Medlock*, the Murfreesboro Ambulance Service ("MAS") transported numerous patients for dialysis who were not experiencing an emergency nor had any medical necessity for ambulance transport. The defendants billed Medicare for these services rendered to these patients, representing that transportation by stretcher was required. Despite the United States' argument that the Medicare recipients who the defendants transported were not entitled to reimbursed rides, the Sixth Circuit found that the submission of claims in the patients' names did not constitute aggravated identity theft as the defendants did not "display, barter, or refer to means of identification, as such, during, in relation to, or for the purpose of helping to commit the crime," but rather "lied only about their own eligibility for reimbursement of the services."

792 F.3d at 706-07.   In an addendum to the opinion, the court clarified that one count of conviction for aggravated identity theft by defendant Kathy Medlock was affirmed.  She did not challenge this count of conviction, and the court found that, unlike the other counts where no "use" of a patient's means of identification was found, with respect to this count it had been shown that Kathy Medlock forged a physician's signature, thereby using his identity to obtain reimbursement.  792 F.3d at 712.

In the case at bar, similarly to the facts in *Medlock*, Michael allegedly submitted a claim in the name of a Humana insurance recipient for services (the filling of a prescription for Lovasa) which Michael did not provide.   Additionally, similarly to the facts in *Miller*, Michael submitted to Humana information that physician A.S. prescribed the drug for the Humana recipient, when he did not.  The United States argues that a distinction can be drawn between *Miller* and *Medlock* and the charge here inasmuch as Michael's claim for reimbursement was "wholly fictitious." We do not find that any such distinction can be drawn.

The final case, *United States v. White*, 846 F.3d 170 (6th Cir. 2017), reinforces the court's conclusion that the conduct alleged in Count 8 of the SSI does not constitute aggravated identity theft as a matter of law.  There the court stated, in pertinent part:

> We conclude that White's actions are distinguishable from both the *Miller* and *Medlock* defendants, and that White's actions in this case are most similar to Kathy Medlock's affirmed aggravated identity theft conviction for signature forging in the *Medlock* addendum. Both of those cases were principally about defendants who lied about their own actions. And, importantly, the personal information used in both *Miller* and *Medlock* was memorialized in documents that were submitted to other parties with the *Miller* and *Medlock* defendants' names and identities included on those documents. White did more than simply lie about whether her clients were eligible for military discounts. Indeed, she did more than assert to the airlines that her clients were eligible. She took a significant additional step, and submitted what she represented to be actual identification that the United States Military purportedly had issued for her clients…The distinction in this case (and the similarity to Kathy Medlock's valid conviction under § 1028A for signature forging) arises from White's actions in creating false military

identification cards and attempting to pass them off as her clients' own personal means of identification…We therefore conclude that White was properly convicted pursuant to 18 U.S.C. § 1028A because when she manufactured *178 and submitted to the airlines the fraudulent military identification cards, she "used," without lawful authority, a means of identification of another person during and in relation to the wire-fraud felony of which she was convicted.

*United States v. White*, 846 F.3d 170, 177–78 (6th Cir. 2017).  The Sixth Circuit in *White* offered

a clear demarcation between what is and is not within the scope of aggravated identity theft.

Michael's conduct, charged in Count 8, does not constitute aggravated identity theft, as a

matter of law.  Count 8 of the SSI will be dismissed by separate order.

**IT IS SO ORDERED.**

April 29, 2017

**Charles R. Simpson III, Senior Judge**
**United States District Court**