UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

UNITED STATES OF AMERICA                                                          PLAINTIFF

v.                                                                CIVIL ACTION NO. 3:16CR-101-CRS

PHILIP E. MICHAEL, II                                                             DEFENDANT

**MEMORANDUM OPINION**

This matter is before the court on motion of the defendants, Philip E. Michael, II ("Michael"), to dismiss Counts 2 and 3 of the Second Superseding Indictment ("SSI"). [1,2]

The SSI charges Michael, Meds 2 Go, and Euton Laing,[3] with Conspiracy to Violate the Federal Food, Drug, and Cosmetic Act by misbranding drugs (Count 2), and Conspiracy to Distribute Misbranded Drugs (Count 3). The defendant has moved to dismiss these counts for insufficiency of the indictment, citing *Hamling v. United States*, 418 U.S. 87, 177 (1974) and *United States v. Superior Growers Supply, Inc.*, 982 F.2d 173,176 (6th Cir. 1992).

An indictment must provide a "plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed.R.Crim.P. 7(c). The purpose of an indictment is "to inform the defendant of the nature of the accusation against him." *Russell*, 369 U.S. at 767 (quoting *United States v. Hess*, 124 U.S. 483, 487 (1888)). "The Federal Rules of

---

[1] Defendant Euton Laing is named in these counts but has not moved for dismissal.
[2] The United States has indicated that it intends to proceed under the Second Superseding Indictment. This court will therefore address whether the charges therein are able to withstand the challenges raised in the present motion.
[3] Euton Laing is an alleged "Issuing Doctor" for RX Limited, a company which purportedly sold prescription drugs over the internet and employed "fulfillment pharmacies" such as Meds 2 Go which allegedly dispensed the drugs without valid prescriptions.

Criminal Procedure, 18 U.S.C.A., were designed to eliminate technicalities in criminal pleading and are to be construed to secure simplicity in procedure. Rule 2, F.R.Crim.Proc." *United States v. Debrow*, 346 U.S. 374, 376 (1953). As explained by the Supreme Court as early as 1895, an indictment need not be a literary work of art:

> T]he true test is, not whether it might possibly have been made more certain, but whether it contains every element of the offense intended to be charged, and sufficiently apprises the defendant of what he must be prepared to meet, and, in case any other proceedings are taken against him for a similar offense, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction. Evans v. U. S., 153 U. S. 584, 587, 588, 14 Sup. Ct. 934; Batchelor v. U. S., 156 U. S. 426, 15 Sup. Ct. 446.

*Cochran v. United States*, 157 U.S. 286, 290, 15 S. Ct. 628, 630, 39 L. Ed. 704 (1895).

The indictment must be read as a whole, accepting the factual allegations as true, and construing those allegations in a practical sense with all the necessary implications. *United States v. Reed,* 77 F.3d 139, 140 n. 1 (6th Cir.1996) (en banc). An indictment is to be construed liberally in favor of its sufficiency. *United States v. Davis,* 306 F.3d 398, 411 (6th Cir.2002). *United States v. McAuliffe*, 490 F.3d 526, 531 (6th Cir. 2007). The Sixth Circuit further discussed challenges similar to those made by the defendants in this case:

> Here, defendant contends that Counts One and Two of the indictment, which allege violations of the mail fraud statute, 18 U.S.C. § 1341, do not adequately set forth two of the requisite elements of that offense: (1) that defendant acted willfully with an intent to defraud, and (2) that a "material" misrepresentation was made. The mail fraud statute prohibits the use of the mails by any person "having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises...." 18 U.S.C. § 1341. "Mail fraud consists of (1) a scheme or artifice to defraud; (2) use of mails in furtherance of the scheme; and (3) intent to deprive the victim of money or property." *United States v. Turner,* 465 F.3d 667, 680 (6th Cir.2006). Materiality of falsehood is a requisite element of mail fraud. *Neder v. United States,* 527 U.S. 1, 25, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999). The misrepresentation "must have the purpose of inducing the victim of the fraud to part with the property or undertake some action that he would not otherwise do

> absent the misrepresentation or omission." *United States v. Daniel,* 329 F.3d 480, 487 (6th Cir.2003). A misrepresentation "is material if it has a natural tendency to influence, or is capable of influencing, the decision of the decision-making body to which it was addressed." *Neder,* 527 U.S. at 16, 119 S.Ct. 1827 (internal citation and quotation marks omitted).
>
> The requisite intent to defraud requires "an intent to deceive or cheat for the purpose of either causing a financial loss to another or bringing about a financial gain to oneself." Sixth Circuit Pattern Jury Instruction 10.01(2)(E); *see also United States v. Frost,* 125 F.3d 346, 371 (6th Cir.1997). With regard to both elements *532 at issue, an indictment is not fatally insufficient for its failure to allege these elements *in haec verba,* if the facts alleged in the indictment warrant the inference of such elements, i.e., materiality and intent to defraud. *United States v. McGough,* 510 F.2d 598, 602 (5th Cir.1975) (materiality); *United States v. Hoag,* 823 F.2d 1123, 1126 (7th Cir.1987) (intent to defraud).

*United States v. McAuliffe*, 490 F.3d at 531–32.

Michael challenges the sufficiency of Counts 2 and 3 on the ground that these counts fail to allege that the defendants intended to defraud anyone, and fail to allege that any prescription drug was "misbranded." He also urges that Counts 2 and 3 are multiplicious.

First, on its face, it does not appear that Counts 2 and 3 are multiplicious, as they purport to charge 2 separate conspiracies, one involving business conducted through Meds 2 Go, Inc. from 2010 to 2012 (Count 2) and one involving business conducted through Aracoma Pharmacy beginning in June 2009 and continuing to May 2012 (Count 3). Whether the United States proves two separate conspiracies remains to be seen. However, for purposes of assessing the SSI's sufficiency, we find that it meets the standard for notice to the defendant and avoidance of double jeopardy. *Hamling, supra.*

As to the defendants challenges that these counts fail to allege that Michael intended to defraud anyone and fail to allege that any prescription drug was "misbranded," we first reiterate that the indictment must be read as a whole.

Various prescription drugs are identified in the SSI, such as Soma, Ultram, and Fioricet. SSI, ¶¶ 34-36. Counts 2 and 3 allege that prescription drugs dispensed by Michael without a valid prescription constitute "misbranded" drugs. ¶¶ 40, 50.

The SSI charges that

> It was part and an object of the conspiracy that **PHILIP MICHAEL, EUTON LAING,** J.N.B., E.S.K, and others known and unknown by the Grand Jury, would and did introduce and deliver for introduction into interstate commerce, with the intent to defraud and mislead, misbranded drugs…

SSI, Count 2, ¶ 47, and Count 3, ¶ 52.

The defendant argues, as he did in his motion to dismiss the mail and wire fraud counts, that there are no factual allegations supporting a charge that Michael intended to defraud anyone. The United States summarily explains that the factual allegations in the SSI "describe how [the defendants] schemed to defraud customers of their money, by intentionally misleading customers to believe that the prescription drugs purchased from the RX Limited websites were legally prescribed and dispensed." The allegations, when read as a whole, suggest that the very means by which the internet pharmacy business was conducted was designed to conceal the illegality of the operation and deprive the customer of the opportunity to object to participation in the illegal transaction.

Paragraph 23 describes the process by which purchases of prescription drugs were made from the RX Limited entities and then were dispensed and shipped by "Filling Pharmacies" such as Meds 2 Go and Aracoma Pharmacy. The SSI states that the prescription websites would provide an online medical questionnaire relating to the drug the customer wished to purchase, often prepopulating certain answers so that the customer would not be disqualified from

receiving that drug. Often the website would represent that a "physician consultation" was required prior to the order being filled. However, it is alleged that the customer would complete the transaction, paying on-line with a credit card, and then receive the drug, without the physician consultation having been done. The SSI describes that, unbeknownst to the customer, the website operator would send the completed medical questionnaire to an "Issuing Doctor"[4] who would, without any sort of consultation or contact with the customer or verification of the information provided, issue a prescription which was, thus, invalid. Accordingly, there was a "loss" to the customer, despite the customer's receipt of the drug in the mail. As explained in *United States v. Ihenacho*, 716 F.3d 266, 277 (1st Cir. 2013), "From the face of it, the consumers had received entirely legally prescribed drugs. But in fact, they had not." The *Ihenacho* court quoted from *United States v. Bhutanj*, 266 F.3d 661, 670 (7th Cir. 2001) which held that "[T]here was indeed loss to consumers because consumers bought drugs under the false belief that they were in full compliance with the law."

Additionally, the Ryan Haight Online Pharmacy Consumer Protection Act amended the Controlled Substances Act to require that certain disclosures be made on internet pharmacy websites. The statute requires the posting in a visible and clear manner on the homepage of each online pharmacy or site to which such pharmacy is hyperlinked that "This online pharmacy will only dispense a controlled substance to a person who has a valid prescription issued for a legitimate medical purpose based upon a medical relationship with a prescribing practitioner. This includes at least one prior in-person medical evaluation or medical evaluation via telemedicine, in accordance with applicable requirements of section 309." 21 U.S.C. § 831(c)(7). Such disclosure informs a prospective customer, among other things, what interaction between

---

[4] According to the SSI, an "Issuing Doctor" was an individual who may or may not have been a licensed physician.

doctor and patient is required for the doctor to write a valid prescription for that patient. The disclosure also requires that the website notice unequivocally state that "this online pharmacy will only dispense a controlled substance to a person who has a valid prescription." The SSI alleges that the filling pharmacy completing the orders in this case omitted this statutorily-required information. SSI, ¶ 23(k). This notice would arguably have provided potential customers with information material to their decision to do business with the online pharmacy.

For these reasons, the motion of defendant Philip E. Michael, II to dismiss Counts 2 and 3 of the SSI (DN 74) will be denied. A separate order will be entered herein this date in accordance with this opinion.

May 2, 2017

**Charles R. Simpson III, Senior Judge**
**United States District Court**

**IT IS SO ORDERED.**