UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

UNITED STATES OF AMERICA                                                    PLAINTIFF

v.                                                        CIVIL ACTION NO. 3:16CR-101-CRS

PHILIP E. MICHAEL, II
MEDS 2 GO EXPRESS PHARMACY, INC.                                          DEFENDANTS

### MEMORANDUM OPINION

This matter is before the court on motion of the defendants, Philip E. Michael, II ("Michael") and Meds 2 Go Express Pharmacy, Inc. ("Meds 2 Go"), to dismiss Counts 4, 5 and 9 of the Second Superseding Indictment ("SSI"). [1,2]

The SSI charges Michael, Meds 2 Go, and Euton Laing,[3] with Mail Fraud Conspiracy (Count 4), Wire Fraud Conspiracy (Count 5), and Conspiracy to Commit Money Laundering (Count 9). The defendants have moved to dismiss these counts for insufficiency of the indictment, citing *Hamling v. United States*, 418 U.S. 87, 177 (1974) and *Russell v. United States*, 369 U.S. 749, 761 (1962).

An indictment must provide a "plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed.R.Crim.P. 7(c). The purpose of an

---

[1] Defendant Euton Laing is named in these counts but has not moved for dismissal.
[2] The United States has indicated that it intends to proceed under the Second Superseding Indictment. This court will therefore address whether the charges therein are able to withstand the challenges raised in the present motion.
[3] Euton Laing is an alleged "Issuing Doctor" for RX Limited, a company which purportedly sold prescription drugs over the internet and employed "fulfillment pharmacies" such as Meds 2 Go which allegedly dispensed the drugs without valid prescriptions.

indictment is "to inform the defendant of the nature of the accusation against him." *Russell*, 369 U.S. at 767 (quoting *United States v. Hess*, 124 U.S. 483, 487 (1888)). "The Federal Rules of Criminal Procedure, 18 U.S.C.A., were designed to eliminate technicalities in criminal pleading and are to be construed to secure simplicity in procedure. Rule 2, F.R.Crim.Proc." *United States v. Debrow*, 346 U.S. 374, 376 (1953). As explained by the Supreme Court as early as 1895, an indictment need not be a literary work of art:

> T]he true test is, not whether it might possibly have been made more certain, but whether it contains every element of the offense intended to be charged, and sufficiently apprises the defendant of what he must be prepared to meet, and, in case any other proceedings are taken against him for a similar offense, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction. Evans v. U. S., 153 U. S. 584, 587, 588, 14 Sup. Ct. 934; Batchelor v. U. S., 156 U. S. 426, 15 Sup. Ct. 446.

*Cochran v. United States*, 157 U.S. 286, 290, 15 S. Ct. 628, 630, 39 L. Ed. 704 (1895).

The indictment must be read as a whole, accepting the factual allegations as true, and construing those allegations in a practical sense with all the necessary implications. *United States v. Reed,* 77 F.3d 139, 140 n. 1 (6th Cir.1996) (en banc). An indictment is to be construed liberally in favor of its sufficiency. *United States v. Davis,* 306 F.3d 398, 411 (6th Cir.2002). *United States v. McAuliffe*, 490 F.3d 526, 531 (6th Cir. 2007). The Sixth Circuit further discussed challenges similar to those made by the defendants in this case:

> Here, defendant contends that Counts One and Two of the indictment, which allege violations of the mail fraud statute, 18 U.S.C. § 1341, do not adequately set forth two of the requisite elements of that offense: (1) that defendant acted willfully with an intent to defraud, and (2) that a "material" misrepresentation was made. The mail fraud statute prohibits the use of the mails by any person "having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises...." 18 U.S.C. § 1341. "Mail fraud consists of (1) a scheme or artifice to defraud; (2) use of mails in furtherance of the scheme; and (3) intent to deprive the victim of money or property." *United States v. Turner,* 465 F.3d 667, 680 (6th

> Cir.2006). Materiality of falsehood is a requisite element of mail fraud. *Neder v. United States,* 527 U.S. 1, 25, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999). The misrepresentation "must have the purpose of inducing the victim of the fraud to part with the property or undertake some action that he would not otherwise do absent the misrepresentation or omission." *United States v. Daniel,* 329 F.3d 480, 487 (6th Cir.2003). A misrepresentation "is material if it has a natural tendency to influence, or is capable of influencing, the decision of the decision-making body to which it was addressed." *Neder,* 527 U.S. at 16, 119 S.Ct. 1827 (internal citation and quotation marks omitted).
>
> The requisite intent to defraud requires "an intent to deceive or cheat for the purpose of either causing a financial loss to another or bringing about a financial gain to oneself." Sixth Circuit Pattern Jury Instruction 10.01(2)(E); *see also United States v. Frost,* 125 F.3d 346, 371 (6th Cir.1997). With regard to both elements *532 at issue, an indictment is not fatally insufficient for its failure to allege these elements *in haec verba,* if the facts alleged in the indictment warrant the inference of such elements, i.e., materiality and intent to defraud. *United States v. McGough,* 510 F.2d 598, 602 (5th Cir.1975) (materiality); *United States v. Hoag,* 823 F.2d 1123, 1126 (7th Cir.1987) (intent to defraud).

*United States v. McAuliffe*, 490 F.3d at 531–32. As the mail and wire fraud statutes contain the same challenged language, the same analysis applies to both Counts 4 and 5. *Carpenter v. United States*, 484 U.S. 19, 25, n. 6 (1987). To the extent that the defendants' challenge to the count of money laundering conspiracy relies upon the sufficiency of the mail and wire fraud counts, its success rises and falls with the arguments concerning Counts 4 and 5 addressed below.

Additionally, the defendants urge with respect to money laundering conspiracy that the allegations in the SSI "fail to allege facts showing that the funds were 'proceeds' before they were transferred." DN 38-1. While the United States is tasked with proving that the alleged laundered funds constituted "proceeds" of specified unlawful activity, it need not prove its case in the indictment. Rather, the United States must give sufficient notice of the crime it intends to prove. The SSI provides more than adequate notice of the crime charged in Count 9, as it alleges

time, place, and manner of the alleged conspiracy to commit money laundering. Count 9 alleges that beginning in about May of 2004 and continuing until at least December 2012, Michael, Meds 2 Go, and Laing knowingly conspired together and with others known and unknown to knowingly transport, transmit, and transfer funds and monetary instruments in a series of transactions of a value exceeding $10,000 from Hong Kong to a place within the United States with intent to promote the carrying on of mail fraud, wire fraud, and Controlled Substances Act offenses. SSI, DN 78, p. 25. With respect to Meds 2 Go and Michael particularly, there are transfers of funds specifically described in the SSI wherein Michael and Meds 2 Go are alleged to have received payments for prescription drug orders filled by Meds to Go. The SSI then states that beginning about November 2006 and continuing until at least July 2012, Michael, Meds 2 Go, and Laing conspired to conduct financial transactions involving proceeds of specified unlawful activity with the intent to promote the carrying on of such specified unlawful activity, or which was designed in part to conceal and disguise the nature, location, source, and control of the proceeds, and to engage or cause others to engage in interstate or foreign transactions in criminally derived property of a value greater than $10,000. SSI, DN 78, pp. 26-26. As Count 9 of the SSI sufficiently alleges that the defendants conspired to conduct financial transactions which involved proceeds of specified unlawful activity and incorporates the prior paragraphs containing allegations of specific monetary transfers on specific dates, the defendants' challenge to the sufficiency of the allegations in Count 9 of the use of "proceeds" is without merit.

Michael and Meds 2 Go challenge the sufficiency of Counts 4 and 5 on the ground that these counts do not allege that the defendants made a material false statement which caused a loss to any victim. Approaching each of these elements separately, the defendants contend that

there was no false statement, no allegation that any such statement was material, that the patients were not "victims," and did not lose any money because they got what they ordered.

As noted herein, the indictment must be read as a whole. The SSI adequately alleges the elements of mail and wire fraud inasmuch as Michael, Laing, and Meds 2 Go are alleged to have knowingly and willfully conspired together and with others known and unknown to commit mail and wire fraud, whereby they agreed to engage in a scheme to sell, distribute, and dispense prescription drugs over the Internet without issuance of a valid prescription. SSI, DN 78, p. 7, ¶ 23. The transactions were completed over the Internet and purchases made by credit card, and the drugs were dispensed and shipped via UPS, FedEx, and USPS to the customer. *Id.*; SSI, ¶¶ 23, 56, 57.

The United States urges, somewhat simplistically, in their brief that "the factual allegations in the Second Superseding Indictment…describe how [the defendants] schemed to defraud customers of their money, by intentionally misleading customers to believe that the prescription drugs purchased from the RX Limited websites were legally prescribed and dispensed," citing to SSI, p. 8. The allegations, when read as a whole, support this summary description.

Paragraph 23 describes the process by which purchases of prescription drugs were made from the RX Limited entities and then were dispensed and shipped by "Filling Pharmacies" such as Meds 2 Go and Aracoma Pharmacy. The SSI states that the prescription websites would provide an online medical questionnaire relating to the drug the customer wished to purchase, often prepopulating certain answers so that the customer would not be disqualified from receiving that drug. Often the website would represent that a "physician consultation" was

required prior to the order being filled. However, it is alleged that the customer would complete the transaction, paying on-line with a credit card, and then receive the drug, without the physician consultation having been done. The SSI describes that, unbeknownst to the customer, the website operator would send the completed medical questionnaire to an "Issuing Doctor"[4] who would, without any sort of consultation or contact with the customer or verification of the information provided, issue a prescription which was, thus, invalid. Accordingly, there was a "loss" to the customer, despite the customer's receipt of the drug in the mail. As explained in *United States v. Ihenacho*, 716 F.3d 266, 277 (1st Cir. 2013), "From the face of it, the consumers had received entirely legally prescribed drugs. But in fact, they had not." The *Ihenacho* court quoted from *United States v. Bhutanj*, 266 F.3d 661, 670 (7th Cir. 2001) which held that "[T]here was indeed loss to consumers because consumers bought drugs under the false belief that they were in full compliance with the law."

Additionally, the Ryan Haight Online Pharmacy Consumer Protection Act amended the Controlled Substances Act to require that certain disclosures be made on internet pharmacy websites. The statute requires the posting in a visible and clear manner on the homepage of each online pharmacy or site to which such pharmacy is hyperlinked that "This online pharmacy will only dispense a controlled substance to a person who has a valid prescription issued for a legitimate medical purpose based upon a medical relationship with a prescribing practitioner. This includes at least one prior in-person medical evaluation or medical evaluation via telemedicine, in accordance with applicable requirements of section 309." 21 U.S.C. § 831(c)(7). Such disclosure informs a prospective customer, among other things, what interaction between doctor and patient is required for the doctor to write a valid prescription for that patient. The

---

[4] According to the SSI, an "Issuing Doctor" was an individual who may or may not have been a licensed physician.


disclosure also requires that the website notice unequivocally state that "this online pharmacy will only dispense a controlled substance to a person who has a valid prescription." The SSI alleges that the filling pharmacy completing the orders in this case omitted this statutorily-required information. SSI, ¶ 23(k). This notice would arguably have provided potential customers with information material to their decision to do business with the online pharmacy.

Based upon the foregoing analysis, the motion of the defendants, Philip E. Michael, II and Meds 2 Go Express Pharmacy, Inc., to dismiss Counts 4, 5, and 9 of the SSI (DN 38) will be denied. A separate order will be entered herein this date in accordance with this opinion.

May 2, 2017

Charles R. Simpson III, Senior Judge
United States District Court

**IT IS SO ORDERED.**